# UNITED STATES DISTRICT COURT
## EASTER DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| -v- | : Criminal No. 22-435-001 |
| | : |
| TODD GOODMAN | : |

---

### Defendant Todd Goodman's Sentencing Memorandum and Appendix

---

**On the Memorandum:**

*Rocco C. Cipparone, Jr., Esquire*
**157 Bridgeton Pike, Suite 200-320**
**Mullica Hill, NJ 08062**
**(856) 547-2100**
**www.Cipparonelaw.com**
**Attorney for Defendant**

# CONTENTS

I.    APPLICABLE LEGAL FRAMEWORK FOR SENTENCING ...................................... 1

II.    OBJECTIONS TO GUIDELINE CALCULATIONS IN THE PRESENTENCE INVESTIGATION REPORT .................................................................................... 2

III.    THE COURT SHOULD GRANT A VARIANCE FROM THE ADVISORY GUIDELINE RANGE MINIMUM IN ORDER TO IMPOSE A SENTENCE THAT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO MEET THE PURPOSES OF SENTENCING UNDER 18 U.S.C. § 3553 ................................................................................................................ 3

    ➢  Nature and circumstances of the offense and the history and characteristics of the defendant ........................................................................................................... 3

    ➢  History and Characteristics of the Defendant ............................................................ 3

    ➢  Remorse and Acceptance of Responsibility .............................................................. 7

    ➢  Mental Health History ............................................................................................... 7

    ➢  Substance Abuse ....................................................................................................... 7

    ➢  Education .................................................................................................................. 8

    ➢  Employment .............................................................................................................. 8

    ➢  Family Life ................................................................................................................ 9

    ➢  Lack of Prior Record; Risk of Recidivism; Impact of Sentence Type on Recidivism ......... 9

    ➢  Deterrence and Punishment ..................................................................................... 11

    ➢  The kinds of sentences available .............................................................................. 13

    ➢  The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ..... 13

    ➢  Pertinent policy statement issued by the Sentencing Commission .................................... 13

    ➢  The need to avoid unwanted sentencing disparity among defendants with similar records who have been found guilty of similar conduct ........................................................... 13

    ➢  The need to provide restitution to any victims of the offense ............................................ 13

IV.    UNRESOLVED NON-GUIDELINES REVISIONS AND OTHER UPDATES TO THE PSR ……………………………………………………………………………………………14

CONCLUSION ................................................................................................................. 17

# I.    APPLICABLE LEGAL FRAMEWORK FOR SENTENCING

The advisory sentencing guidelines are now just one of the several factors which the Court must consider at sentencing pursuant to the guiding principles in *U.S. v. Booker*, 534 U.S. 220 (2005) and 18 U.S.C. § 3553. As is well established, the Court should impose a sentence that is reasonable and "*sufficient but not greater than necessary*" to achieve the purposes of sentencing. 18 U.S.C. § 3553(a). The United States Court of Appeals for the Third Circuit has interpreted *Booker* to require that a sentencing court employ the following three steps: (1) calculate a defendant's Guidelines sentence precisely as it would have before *Booker*; (2) formally rule on the motions of both parties, stating on the record whether it is granting a departure and if so, how the departure affects the Guidelines calculation, while taking into account the Third Circuit's pre-*Booker* case law (which has advisory force); and (3) exercise its discretion by considering the relevant 18 U.S.C. § 3553(a) factors in determining the sentence, regardless whether it varies from the Guideline advisory range. *U.S. v. Handerhan,* 739 F. 3d 114, 120 (3d Cir. 2014); *U.S. v. Ali*, 508 F.3d 136, 142 (3d Cir. 2007)(citing *U.S. v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006); *U.S. v. King*, 454 F.3d 187, 196 (3d Cir. 2006); *U.S. v. Cooper*, 437 F.3d 324, 330 (3d Cir. 2006).

The sentencing court expressly must consider and weigh all the relevant statutory factors set forth in 18 U.S.C. § 3553(a) and exercise its independent judgment to determine what is the appropriate sentence. *U.S. v. Grier*, 475 F.3d 556, 571-72 (3d Cir. 2007). *See also Cooper*, 437 F.3d at 329; *U.S. v. Vampire Nation*, 451 F.3d 189, 196 (3d Cir. 2006). The factors which the sentencing court must consider pursuant to 18 U.S.C. § 3553(a) are:

    (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

    (2)    the need for the sentence imposed

        (A)    to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B)    to afford adequate deterrence to criminal conduct;

        (C)    to protect the public from further crimes of the defendant; and

(D)     to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)     the kinds of sentences available;

(4)     the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ... issued by the Sentencing Commission[;]

(5)     any pertinent policy statement ... issued by the Sentencing Commission[;]

(6)     the need to avoid unwanted sentencing disparity among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a). *See also Grier*, 475 F.3d at 571 n.10.

Considering *Booker* and its progeny, a sentencing court also may engage in a variance from the advisory sentencing guideline range based on factors that would not otherwise be a sufficient or even a permissible basis for departure under the advisory guidelines:

> 'a guidelines departure prohibition does not preclude the district court from considering that factor when the issue is a variance under *Booker*.'      *United States v. Gatewood*, 438 F.3d 894, 897 (8th Cir.2006); see also, e.g., *United States v. Lake*, 419 F.3d 111, 114 (2d Cir.2005)(commenting that "absent the strictures of the Guidelines, counsel would have had the opportunity to urge consideration of circumstances that were prohibited as grounds for a departure" under § 5K2.0(d)); *United States v. Milne*, 384 F. Supp.2d 1309, 1312 (E.D.Wis.2005) (holding that post-*Booker*, "courts may grant additional consideration to defendants who demonstrate acceptance beyond that necessary to obtain a two or three level reduction under § 3E1.1" because "such conduct bears directly on their character, § 3553(a)(1), and on how severe a sentence is necessary to provide deterrence and punishment, § 3553(a)(2)").

*U.S. v. Severino*, 454 F.3d 206, 211 (3d Cir. 2006). *See also Vampire Nation*, 451 F.3d at 195-96 (delineating difference between variance and departure).

## II.  OBJECTIONS TO GUIDELINE CALCULATIONS IN THE PRESENTENCE INVESTIGATION REPORT

None.

### III. THE COURT SHOULD GRANT A VARIANCE FROM THE ADVISORY GUIDELINE RANGE MINIMUM IN ORDER TO IMPOSE A SENTENCE THAT IS SUFFICIENT BUT NOT GREATER THAN NECESSARY TO MEET THE PURPOSES OF SENTENCING UNDER 18 U.S.C. § 3553

In Mr. Goodman's situation, weighing the relevant sentencing criteria favors a sentence of probation. The Presentence Report ("PSR") properly establishes a guideline range of 0-6 months based on an Offense Level 2 and Criminal History Category I (Mr. Goodman has no prior convictions or even arrests). A probation sentence would be sufficient but not greater than necessary in Mr. Goodman's circumstances and the case in context as well.

The lasting stigma and collateral consequences of this federal conviction, along with a probation sentence, will provide more than sufficient general and specific deterrence in the attendant circumstances.

Analysis and application of the salient factors under 18 U.S.C. § 3553(a) makes clear that a sentence of probation is sufficient but not greater than necessary here.

The salient sentencing factors are:

➤ **Nature and circumstances of the offense and the history and characteristics of the defendant**

Mr. Goodman, by his voluntary guilty plea, stands convicted of the misdemeanor offense of dispensing a controlled substance without a valid prescription, in violation of 21 U.S.C. §§ 842(a)(1) and (c)(2)(A). Although that is a serious offense, Mr. Goodman's conduct was inconsistent with his well-established solid good character, the latter of which – along with the other factors discussed *infra* -- warrants significant sentence mitigation.

➤ **History and Characteristics of the Defendant**

Mr. Goodman is 60 years old with no prior criminal history. He has led an otherwise law-abiding, family and community positive life. He is a lifelong resident of the Philadelphia

area, and is married to Renee for the past 33 years. They have two adult children, and Mr. Goodman maintains an excellent marriage and an excellent relationship with his children (speaking daily with his children who do not reside with the couple and seeing them weekly, and of course his wife who does reside with him, speaking with and seeing her daily of course!). PSR ¶¶ 62-65. Mr. Goodman's mother is age 86 and resides in an assisted living facility very close to his home (PSR ¶ 66) so that Mr. Goodman can – as he does – provide the necessary emotional support to his mother.

Mr. Goodman also served his community in several capacities, including coaching youth sports for years. See PSR ¶ 78. As Alan and Shari Karpo write to the Court:

> Aside from his normal activities with his family, Todd has volunteered hours of his time coaching baseball in the community, even when his own children weren't participating. Community members looked to Todd as a stalwart, honest mentor for their children and were thrilled if they were lucky enough to have him as their coach. He has always demonstrated his commitment to his family and community with his actions and a warm heart.

A.003 (Karpo letter). Amy Titus writes specifically how Todd was more than a coach in the community to the youth, including her son, he was a mentor:

> Our son Jack was a baseball player and needed to start again in a new league. Todd was the head coach for the local team and he welcomed us with open arms. Jack had many coaches during his 15 year baseball career but none were more influential than "Coach Goodman." Todd taught Jack more than baseball skills. He taught him about sportsmanship, fairness, playing by the rules and respect for the officials. He led by example and was an incredible role model for all of the players. I knew Todd was someone I wanted as a friend in addition to being my sons coach.

Todd became more than a coach to Ms. Titus and her family, he became a reliable friend:

> On June 14, 2019, my husband of 30 years died suddenly and unexpectedly. Todd stepped up and helped me in so many ways. He guided me through

> the funeral arrangements, he led me through the process of recording the will, he helped me consult with my financial advisors and most importantly, he provided a strong shoulder for me to lean on when I needed it the most. I did not have to ask Todd for anything; he just did it.

A.004 (Titus letter). Collenn Ceruti, whose son Nicholas (now 27) also was coached by Todd, recounts how Todd was not just a coach who emphasized winning over losing, was not just a coach who focused on the negative, but was a coach who cared about the players, helped them develop their character, rendered praise even in defeat, and went above and beyond:

> When you played for Todd, he was invested for life. This was not only for the player, but the family as well. Todd gave endless hours, beyond his workday, to provide the best experience for each and every baseball player throughout the season. ...
>
> Nicholas is now 27 years old, and his baseball years are long gone, but his relationship with Todd Goodman and the Goodman family will last a lifetime. My son, as well as his whole family, value this friendship! We learned a long time ago that Todd is a "GOOD MAN".

A.006-07 (Cerruti letter). See also A.009-010 (letter from David Kuritz, Esq).

As the Court knows here from the PSR, Mr. Goodman's conduct was not motivated by greed or profit: again, he only received his pay for the work performed. That lack of greed is consistent with Mr. Goodman's true character, including in the practice of law, as appears from the example in Dianna Pagan's letter to the Court:

> Todd met with me in 1991 and decided to take on my case and represented me for the following thirty plus years. Todd fought my case in court and was able to secure my workers compensation payments beginning in 1991. He went to well over 20 in person hearings and spent thousands of hours of his time fighting for my case over the next 30 years, never taking any money he was entitled to by law. He told me he understood the hardship of my permanent disability coupled with the small amount of my bi-weekly payments and therefore he would not be taking any money for his work. Due to a life threatening health

> condition, unrelated to the accident, my employer
> kept me in their workers compensation system for
> over 30 years. My employer and their attorneys
> battled against my case for over 20 years, trying to
> disqualify me due to my unrelated health status. Todd
> Goodman was by my side fighting my case, winning
> every court hearing over the next 20 plus years, and
> still he never took any money his firm was entitled to.
> After paying me for over 30 years my employer finally
> reached out to Todd and offered a lump sum
> settlement in 2019. Todd Goodman facilitated my
> settlement payment and even then, after all his time
> dedicated to my case, he did not take any entitled
> payment.

A.011 (Pagan letter).

A myriad of other letters attached in the Appendix hereto recount how Mr. Goodman as a pharmacist was compassionate, concerned, and went above and beyond to assist persons (e.g. A.015 (Greenberg's letter) and A.019 (letter from friend and former pharmacy employer Jeff Moskowitz), and is an honest and loyal friend long-term (44 years) friend (*see e.g.* A.015, letter from Harris Chernow, and A.030, letter from friend of 55 years Renee Rubenstein). Mr. Goodman is a dedicated and selfless brother, husband, father, and "in-law", with examples supporting those conclusions referenced in the individual letters that I will not recount in detail here as they are in the Appendix, and I know the Court will indeed read them. *See* A.017-018, letter from brother Jay Goodman; A.021, letter from sister-in-law Jodi Goodman; A.022, letter from son Lance Goodman; A.025, letter from brother Matthew Goodman; A.028, letter from wife Renee Goodman; A.032, letter from son Ross Goodman.

His long-term friend (since elementary school), Dr. Philip Schwartz, notes that notwithstanding the instant conviction, Todd is

> Over the years and continuing to this day he is the
> most ethical person I know. I am a physician and we
> have had many conversations over the years regarding
> medication treatments and I have specifically sought
> his advice when dilemmas in treating my patients
> have arisen. He has and continues to provide advice,
> much of which comes down to reassurance that
> keeping the best interest of the patient in mind will
> guide the answer.

A.027 (Schwartz letter).

➢ **Remorse and Acceptance of Responsibility**

Mr. Goodman certainly appreciates the nature and substantial negative consequences of his conduct, as the Court can assess from his guilty plea colloquy. PSR ¶ 42. The Court can easily further assess Mr. Goodman's remorse and acceptance of responsibility, which warrant mitigation of sentence, through his letter to the Court. A.001 (Todd Goodman letter). He truly has reflected on this case and particularly his actions which have led him here, and the bump to his well-regarded and long-standing integrity as a person. His regret and to some extent self-flagellation will continue long beyond the Court's sentence in this case:

> Foolishly and irresponsibly, I turned a blind eye thinking I was helping the owner who was struggling. I will regret for the rest of my life not standing firm with my values and doing what I knew to be right. As I taught my sons and all the kids I coached, you need to be held accountable in life. You must accept responsibility for your actions and the consequences that come with them. I hope with my guilty plea, and the resolution of the civil matter, I have taken the first steps to prove this to your honor. Not only was accepting responsibility the right thing to do, but it was also important for me to do so. When I look in the mirror at present, I don't like what I see. I want my sons to be proud of me. But I want to be proud of myself too. This is the first step for me moving forward and rebuilding my life.

A.002 (Todd Goodman letter). That too bodes well for his lack of recidivism, which is undeniably virtually no risk, as all the available information makes clear.

➢ **Mental Health History**

Mr. Goodman has no history of any serious mental health issues. Over 20 years ago an episodic employment-related stress/anxiety situation for which he briefly sought counselling. He also was prescribed some medication for the same (anxiety/stress) again in 2013 for a few years, which he no longer takes or needs. PSR ¶ 74.

➢ **Substance Abuse**

Mr. Goodman has no history of substance abuse.

➢ **Education**

Mr. Goodman achieved Bachelor of Science in Pharmacy degree from Temple University in 1986, and a Juris Doctor degree from Widener University in 1989. PSR ¶¶ 76-77.

➢ **Employment**

Mr. Goodman has been industrious and hard-working all throughout his life and has been consistently and gainfully employed in dual capacities since 1989, as a part-time pharmacist, and also practiced law part time, contemporaneously. Mr. Goodman (presently voluntarily) has discontinued working as a pharmacist but continues to now work full-time in the practice of law at a law firm (the same one at which he worked part-time for the prior 10 years). PSR ¶¶ 78-79, 82. Prior to his part-time work with the law firm, Mr. Goodman had his own legal practice beginning in 2005, but it was not particularly financially successful, and ultimately for that reason he closed his practice and continued to work part-time/per diem as an attorney, and part-time as a pharmacist. PSR ¶¶ 80-81.

Mr. Goodman, as part of his civil settlement with the government, has agreed to a permanent commitment to never dispense or distribute controlled substances: he can never work as a pharmacist – the career he enjoyed more than the practice of law – again. PSR ¶ 24. It was Mr. Goodman's intention, once he becomes eligible for social security, to supplement social security payments by continuing to work as a part-time pharmacist, but now that essentially life-long retirement plan is no longer viable.

In addition, of course as the Court is aware, any attorney who suffers a conviction must report the same to the relevant licensing boards and courts, which Mr. Goodman – who is admitted to practice in NJ and PA – has done through his respective disciplinary counsel (he engaged counsel in each jurisdiction). Mr. Goodman certainly will face licensing ramifications of his conviction post-sentencing in each of those jurisdictions, including potential disbarment according to his respective disciplinary counsel. The disciplinary boards are currently investigating and evaluating the matter, and further action is expected post-sentencing. Therefore, in addition to the preclusion of earning a living and working as a pharmacist, his ability to do so also as a lawyer is in serious jeopardy. Both of those collateral consequences are

impactful and should be considered in mitigation of the sentence to be imposed here.

Mr. Goodman otherwise has acted with the highest integrity, and that his current and long-time law firm employer David Kuritz Esq. writes in his letter:

> As his direct supervisor, I can tell you that he is an honest, hard-working and skilled attorney. He is well liked by our staff, our clients and even opposing counsel. My own clients have commented on how compassionate and empathetic he is and I have observed the same. In my opinion, Todd is a man of good character and has always conducted himself in an ethical manner. As a member of the bar, I do not take writing this letter lightly. I am aware that Todd has pled guilty to a single misdemeanor and I tell you without hesitation that has not changed my opinion of him. In fact, it reinforces what I have always observed regarding his commitment to his family first over his own personal needs. He remains my friend and continues to be a valued member of our firm.

A.011 (Kuritz letter).

➢ **Family Life**

Mr. Goodman has earned and enjoys a rich family life, as discussed more fully *supra* and in paragraphs 62-69. He is a devoted husband, father, sibling and son and continues to enjoy the emotional support of his wife, children, siblings, and his mother, as well as his friends and personal community. That is all to his credit, as all too often sentencing court's are faced with individuals who lack that support (some of whom earned that lack of support as well by their past behavior). Mr. Goodman's support network also is a factor that bodes well to ensure that Your Honor, nor any other court in a criminal context, will be seeing Mr. Goodman again.

➢ **Lack of Prior Record; Risk of Recidivism; Impact of Sentence Type on Recidivism**

Mr. Goodman has no prior record. He has a criminal history score of zero, which establishes a criminal history category I. PSR ¶¶ 54-59. The U.S. Sentencing Commission has conducted detailed studies of reliable empirical data to determine the least likely demographic of persons to reoffend. Mr. Goodman falls into the categories that place him squarely within the demographics of a least likely to reoffend person. Indeed, persons age 60 or over – Mr.

Goodman is age 60 – have by far the lowest recidivism rate, as the below chart from page 22 of the report indicates. "[T]he Commission's research shows that the younger than 30 age group had the highest rearrest rate (64.8%) and the rate declined with each age group that follows to a low of 16.4 percent", also as reflected in the below reproduced chart from the report.[1]

**Table 1** Overview of Age and Recidivism Study Findings
Rearrest Recidivism Measure

| | Younger than 30 Years n=6,796 | 30 to 39 Years n=8,523 | 40 to 49 Years n=5,894 | 50 to 59 Years n=2,969 | 60 Years or Older n=1,204 |
|---|---|---|---|---|---|
| Percent | 64.8% | 53.6% | 43.2% | 26.8% | 16.4% |
| Median Time to Recidivism Event | 17 Months | 22 Months | 22 Months | 25 Months | 28 Months |
| Median Number of Recidivism Events | 3 | 2 | 2 | 1 | 1 |
| Most Serious Post-Release Event | Assault (26.6%, n=1,170) | Assault (24.1%, n=1,102) | Assault (20.3%, n=517) | Other Public Order Offense (22.5%, n=179) | Other Public Order Offense (23.7%, n=47) |

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECID05_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

In addition, persons with zero (0) criminal history points such as Mr. Goodman, have the lowest recidivism rate compared to those with any criminal history points (even substantially lower than Category I offenders with just 1 criminal history point).[2]

As the U.S. Sentencing Commission studies have determined, persons who receive prison sentences indeed are much more likely to reoffend than those who receive probation: "Offenders who received a prison only sentence had a higher rearrest rate than offenders who

---

[1]  The Effects of Aging on Recidivism Among Federal Offenders at 22, United States Sentencing Commission (December 2017). The full report can be accessed and downloaded at https://www.ussc.gov/research/research-reports/effects-aging-recidivism-among-federal-offenders.

[2]  "Overall, an offender's total criminal history score is a strong predictor of recidivism. Rearrest rates range from a low of 30.2 percent of offenders with zero criminal history points to a high of 85.7 percent for offenders with 15 or more criminal history points. Each additional criminal history point is generally associated with a greater likelihood of recidivism. ...[T]there is a 22.1 percentage point difference in rearrest rates between offenders with no criminal history and one-point offenders."    The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders at 14, United States Sentencing Commission (March 2017).

received a different form of sentence (Figure 23)."[3]   Figure 23 in that report is reproduced here:



Fig. 23 Rearrest Rate of Recidivism Study Offenders by Type of Federal Sentence Imposed and Age at Release

SOURCE: U.S. Sentencing Commission's 2005 Recidivism Release Cohort Datafile, RECIDOS_OFFUPDT. The Commission excluded cases from this analysis that were missing information necessary to perform the analysis.

For those reasons, and considering all of the information contained in this Memorandum, the PSR, and to be gleaned from the materials in the Appendix hereto, Mr. Goodman certainly is not likely to reoffend.

➢   **Deterrence and Punishment**

The attendant purposes of sentencing would be met by a sentence of probation.

### a. Specific Deterrence

As stated, all empirical data demonstrates that the likelihood that Mr. Goodman will reoffend is miniscule. The anecdotal and personal data regarding Mr. Goodman makes clear that such a likelihood is essentially non-existent. He has led a law-abiding, positive life but for his aberrational conduct for which he is being sentenced. He has served his community and family well, including coaching youth sports, garnering praise from his current employer (see A.009, letter from David Kurtiz Esq.) notwithstanding the instant offense of conviction, he did not personally profit from his offense conduct (PSR at 9 n.1) and therefore was not motivated by personal financial gain. His compensation at Verre Pharmacy was not excessive, and was

---

[3]   The full report can be accessed and downloaded at https://www.ussc.gov/research/research-reports/criminal-history-and-recidivism-federal-offenders.

commensurate with his part-time employment there[4], in line with the regular earnings of a pharmacist. PSR ¶ 79.

## b. General Deterrence

General deterrence must be viewed in context. Here, Mr. Goodman's personal history, and the picture of him that emerges overall, makes clear that general deterrence still could and would be served by a probation sentence, which is squarely called for in a 0-6 month sentencing guideline range (offense level 2, Criminal History category I).

The many factors that support this conclusion are presented in detail *supra* and in the Defendant's Appendix, but the most salient include (in random order):

- ➢ the life-long stigma of this conviction upon Mr. Goodman

- ➢ the loss of his career and earning capacity as a pharmacist

- ➢ the likely loss – and at a minimum significant disciplinary action and suspension – of his law licenses in two states, and his ability to earn a living in that regard

- ➢ the substantial diminution in assets he has incurred as a result of substantial legal fees regarding this criminal case, the related civil case brought by the government, and ongoing legal fees regarding his disciplinary proceedings

- ➢ his well-lived law-abiding family and community supportive life

- ➢ his guilty plea and acceptance of responsibility

- ➢ the agreement by Mr. Goodman in settlement of the civil litigation with the government to pay $60,000 to the government, further substantially reducing his assets and penalizing him, and

- ➢ the extremely low/no risk of recidivism at his age, and in his individual circumstances.

The combination of those factors (and the others cited throughout this memorandum and its Appendix) make Mr. Goodman's situation unique enough to warrant a sentence of

---

[4]  Indeed, his pay for the average 10-20 hours per week he worked over the years probably was lower than the average equivalent pharmacist income: "The average Pharmacist [full-time] salary in Pennsylvania is $150,417 as of November 27, 2023, but the range typically falls between $141,724 and $160,215."
https://www.salary.com/research/salary/benchmark/pharmacist-salary/pa

probation and such would not do any harm to – and will still foster -- general deterrence.[5]

### c. Punishment

The need for punishment still would be met by a sentence of probation. The conviction alone is substantial punishment given the lasting stigmatic effect it will have upon the defendant. Other punitive effects include those discussed in the preceding sub- section as well.

> ➤ **The kinds of sentences available**

The urged sentence is within the range of those available to the Court in this case.

> ➤ **The kinds of sentence and the sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines**

The sentencing guideline range established is determined by applicable total level 2, criminal history category I, to be 0-6 months.

> ➤ **Pertinent policy statement issued by the Sentencing Commission**

There are no particularly applicable policy statements.

> ➤ **The need to avoid unwanted sentencing disparity among defendants with similar records who have been found guilty of similar conduct**

Each case and defendant still is an individual consideration, and in light of all of the foregoing factors discussed, the requested sentence would not create any unwarranted sentencing disparity from others convicted of similar offenses.

> ➤ **The need to provide restitution to any victims of the offense**

Restitution is not an issue in this case. PSR ¶¶ 101-102.

---

[5] Those "distinguishing characteristics render the ultimate disparity [although none is being sought here as the range provides for probation as an option] from the Guidelines reasonably warranted. ... [A] potential offender observing the sentencing proceedings would receive the message that prison time could be imposed absent those meaningful distinctions, which satisfies the § 3553(a) goal of general deterrence" *U.S. v. Howe*, 543 F.3d 128, 140 (3d Cir. 2008).

## IV.   UNRESOLVED NON-GUIDELINES REVISIONS AND OTHER UPDATES TO THE PSR

The "Offense Conduct" section of the Presentence Report ("PSR") contains substantial surplusage to which Mr. Goodman does not agree factually, and which is not part of the offense of conviction. Mr. Goodman pled guilty to dispensing one prescription of a controlled substance without a valid prescription. The additional information alleged is not integral to and indeed in large part is outside of the scope of the offense conduct. As a non-exhaustive example, the alleged "BBDF" conduct set forth in the section labelled "Health Care Fraud" (¶¶ 25-29) is an alleged fraud scheme with which Mr. Goodman never was charged, including in the now superseded indictment. It is not integral to, or part of, the offense conduct for the crime charged in the superseding Information to which Mr. Goodman pled guilty. Mr. Goodman stands by his plea colloquy and admission of facts as specifically stated on the record during the guilty plea, which did not include these superfluous facts. Although the government read into the record that it would be prepared to prove such if the original case had proceeded to trial, the plea facts as defense counsel stated on the record at the time were limited to dispensing the one controlled substance without a prescription on May 26, 2018 (described properly in the last paragraph contained within ¶39 of PSR). Consequently, those other non-essential facts, especially the 'BBDF' allegations, should not be in this report."

The very limited misdemeanor to which Mr. Goodman pled guilty was dispensing a single prescription for cash on a single date knowing that such was without a valid prescription. This BBDF issue, for example, is complex and would consume days of hearing. Mr. Goodman contests the allegations (and did so in the civil case answer as well) so there should be no blind acceptance of unproven and unadmitted allegations. Inclusion of this superfluous information, when Mr. Goodman was never even charged in that regard, simply is not what is contemplated by "relevant conduct" under USSG 1B1.3. The allegations – and they are nothing

more than that at this point – of involvement in BBDF is certainly outside even the scope of the original indictment, let alone the superseding Information. The PSR -- which follows Mr. Goodman throughout his time under the Court's supervision, whether during incarceration (which it is urged should not be imposed) or during probation, should not contain such untested prejudicial information. The government agreed that Mr. Goodman would plead guilty to one count which had nothing to do with "BBDF" or other fraud. Bald acceptance of the government's theories and allegations are not warranted. Indeed, Mr. Goodman is prejudiced by such, having not prepared any defense on the uncharged issue. Note it is of no moment that the BBDF was referenced in the civil complaint as that matter was stayed pending the disposition of the criminal case and now settled, again without the need for preparation of a full defense. The inclusion of this information in the PSR is inappropriate also for that reason: it would unduly prolong the sentencing process to have hearings on the validity of the allegations of fraud.

Mr. Goodman of course will face disciplinary action by the PA and NJ attorney licensing boards, and allegations of fraud credited in a sentencing process, especially in this context with limited defense preparation on that issue, is unfair and likely to prejudice him in that context as well. BBDF has nothing to do with filling one prescription for cash knowing it was not pursuant to a valid prescription. The government is merely trying to convolute the record and dirty-up Mr. Goodman with unproven and contested allegations for sentencing. If it wanted to pursue BBDF criminally, not through the sentencing back door, it should have done so. It did not even seek or obtain indictment on such. In addition, Mr. Goodman would challenge the analysis of any computer records obtained and relied upon by the government; the allegation that there was any conspiracy to bill fraudulently; and that Mr. Goodman had any participation in such or that he profited. A copy of Mr. Goodman's Answer to the civil complaint (at docket number 2:22-cv-00343-MAK Document 48) was attached to the defense reply to the government's objection letter to the PSR writer, and all of Mr. Goodman's affirmative defenses are incorporated herein not to make a mountain out of this issue, but mindful that

> Where a defendant fails to object to a presentence report, that report may be relied upon to find, as relevant here, the predicate criminal history necessary for sentencing enhancements. *See United States v. Siegel*, 477 F.3d 87, 93 (3d Cir. 2007) (holding that an unobjected-to presentence report established that a prior conviction was a crime of violence for Guidelines purposes). And if the defendant does object, in order for that objection to put the report in dispute, the defendant must provide "detailed reasons" why the "findings were unreliable." *United States v. Campbell*, 295 F.3d 398, 406 (3d Cir. 2002).

*United States v. Joseph*, 648 F. App'x 244, 9 (3d Cir. 2016). For those reasons, the Answer is attached and incorporated. There is no more basis to accept the government's bald allegations than there is the responses and defenses set forth therein.

The *Stevenson* case cited by the government in its response to the draft PSR (and presumably in its not yet filed sentencing memo) is not applicable. *U.S. v. Stevenson*, 325 F. Supp. 2d 543 (E.D. Pa. 2004). There, the additional conduct description of the defendant's violence was motivated and prompted by his firing and replacement with the victim who was attacked. It was also motivated by an attempt to cover up the fraud of which Stevenson was convicted, to which it was determined relevant. *Stevenson*, 325 F. Supp. 2d at 548. It was a flow of related events. Here, filling an invalid prescription for cash begins and ends when the prescription is filled. Any alleged (and again disputed) "BBDF" fraud scheme did not flow from or cause that offense. It is highly and unfairly prejudicial for the foregoing reasons and should be excised from the report.

I recognize that the guideline range is unaffected by this issue (and I assume so does the government), and do not want to make this a trial within a sentencing, but the Court's perceptions should not be unfairly prejudiced, and the collateral effects of including that information in a PSR are potentially serious as indicated. It is not a "no harm, no foul" situation. PSR paragraphs 25-39, except for those describing Mr. Goodman's employment status, and the last paragraph of ¶ 39, should be deleted from the report and should not be considered by the Court.

## **CONCLUSION**

Based on the foregoing, it respectfully is submitted that the Court should sentence Mr. Goodman to a sentence of probation pursuant to the Sixth Amendment, *Apprendi*, *Booker* and their progeny. That sentence would be "*sufficient but not greater than necessary*" to achieve an appropriate balance of the relevant sentencing factors.

Respectfully submitted,

/s/Rocco C. Cipparone, Jr.
Rocco C. Cipparone, Jr., Esquire
Attorney for Todd Goodman

# APPENDIX TO
# GOODMAN SENTENCING MEMO

Dear Judge Bartle:

Thank you for the opportunity to address the Court. I deeply regret my actions and I look back at what I did with great remorse. I want to apologize to this Court, my community, and my friends and family. I would not be here today in front of your Honor if I acted with the integrity and good character which I have tried to demonstrate my entire life.

I would like to take this time to tell the Court a little bit about myself. My life was built on the idea that honesty, integrity, and good character mattered. I lived my life with this in mind and tried my best to set a good example for my sons. I wanted my actions to be a guide for my sons and for them to understand what it meant to be a good human being.

As I stand here today, I don't feel like that man. I have lost my honor and when I needed my character most, I failed. Nobody is responsible for this but me.

To give this Court some context of who I am, I would like to tell you about several positive aspects of my life, not to brag or seek sympathy, but to explain where I went off course from my core values, upbringing and manner in which I lived the vast majority of my life.

I am very fortunate to have grown up the oldest of 3 boys in a loving, caring home created by my parents. My brothers are here today as well as my mom because they love me unconditionally. My father, unfortunately, passed away earlier this year, but he was a man of great integrity. It was important in my house to be honest, respectful, and kind. My parents taught us that with both their words and their actions.

I graduated pharmacy school in 1986 and went to law school immediately thereafter and graduated in 1989. My goal, with both degrees, was to serve the communities I lived in and to help people, especially those people that could not help themselves. That is why I eventually went to work at Verree Pharmacy.

A large portion of Verree Pharmacy's customers were senior citizens. Since my grandmother lived with my family growing up for 14 years, I had a keen interest in doing what I could to help the elderly, as I always envisioned, I was helping my grandmother. Helping this group of society went beyond just talking medicine and illness. A lot of the time it was just talking and mainly listening. I would spend so much time just listening because they were lonely. I tried to be kind and compassionate. I was genuinely eager to help because that's how I was brought up.

I know your Honor is aware that I have had two careers, pharmacy, and law. I also have a third job. It is by far the most rewarding job I ever had. It is being a husband/father. I am married to a one-of-a-kind woman. She's the love of my life and my soul mate. She's the reason that during the toughest time of my life, I have been able to continue to push forward. She is a gem.

I would like to think that I am a good father. I believe this because when I look at my sons I see gentlemen. They are both kind, compassionate and empathetic. They are men of great character, and they live their lives honorably. I know I had something to do with that. I am extremely proud of them. Part of being their father was also being able to coach them in sports, mainly baseball. It gave me the chance to mentor many young men in my community. Just as I raised my kids, I tried to teach the kids I coached to be great men. I was never coaching to win the most games, I was coaching to affect the most lives. I hope I succeeded.

Foolishly and irresponsibly, I turned a blind eye thinking I was helping the owner who was struggling. I will regret for the rest of my life not standing firm with my values and doing what I knew to be right. As I taught my sons and all the kids I coached, you need to be held accountable in life. You must accept responsibility for your actions and the consequences that come with them. I hope with my guilty plea, and the resolution of the civil matter, I have taken the first steps to prove this to your honor. Not only was accepting responsibility the right thing to do, but it was also important for me to do so. When I look in the mirror at present, I don't like what I see. I want my sons to be proud of me. But I want to be proud of myself too. This is the first step for me moving forward and rebuilding my life.

So, I am now at a crossroads. I have two choices. I can let this guilty plea define my life or I can learn from my transgressions and choose to move forward and again become the man I was. I am choosing the latter. Every day moving forward, I will do everything I can, and then some, to restore my honor and rebuild my character. Not because it looks good or sounds good, but because I need to be that man again. I need for my sons to see that man again. Honor, integrity, and good character were the essence of who I was, and will once again, with hard work, be the essence of who I am.

Respectfully,

Todd Goodman

October 19, 2023

Dear Judge Bartle,

We are Alan and Shari Karpo. Todd Goodman is our brother-in-law and has been an integral member of our family for over 40 years.
 He is an extremely kind, committed and generous person with good values and a huge heart who has proven himself to be a true friend that we feel fortunate to call one of our own.

Throughout the years we have admired Todd as a loyal and caring father, husband, brother, son, uncle and member of the community who always put others first.  When any of us needed counsel or support, Todd was always there to provide his assistance and valuable advice.  Aside from his normal activities with his family, Todd has volunteered hours of his time coaching baseball in the community, even when his own children weren't participating. Community members looked to Todd as a stalwart, honest mentor for their children and were thrilled if they were lucky enough to have him as their coach. He has always demonstrated his commitment to his family and community with his actions and a warm heart.

While we fully understand the offense that Todd has been convicted of, we can honestly say that this has not altered how we feel about him. He will always be a trustworthy, upstanding member of our community and family that we know will always be there to support and contribute all his energies for the good of others.

We are proud and grateful to include Todd as a respected and valued member of our family.

Alan Karpo

Shari Karpo

Dear Judge Bartle,

Friends come into your life at all different times and for many different reasons.  As a military wife who moved often over 25 years, I learned quickly how important it is to surround yourself with good people.  In the summer of 2010, the Navy assigned my husband to a job in Philadelphia and our family moved to Huntingdon Valley, PA.  That was when I first met Todd Goodman.

Our son Jack was a baseball player and needed to start again in a new league.  Todd was the head coach for the local team and he welcomed us with open arms.  Jack had many coaches during his 15 year baseball career but none were more influential than "Coach Goodman."  Todd taught Jack more than baseball skills.  He taught him about sportsmanship, fairness, playing by the rules and respect for the officials.  He led by example and was an incredible role model for all of the players.  I knew Todd was someone I wanted as a friend in addition to being my sons coach.

As time went on, my husband John and I spent a lot of time with Todd and his wife Renee and an everlasting friendship developed.  Even though Todd was no  longer Jack's coach, he always took an interest in both of our sons well being.  Jack and Matt look up to Todd and have reached out to him for guidance and advice on many occasions.  They know that Todd will always give them honest and intelligent direction.  I am so grateful for the love and support he has given to the boys over the years.  They know they can always count on Todd to be there for them.

It is fun to celebrate good times with friends but it is often during the worst of times when you discover the true depths of a friendship.  On June 14, 2019, my husband of 30 years died suddenly and unexpectedly.  My very first phone call from the hospital was to Todd and Renee and they were both at my side within the hour.  Todd was grieving the loss of his friend while being the rock that I  needed to survive this tragedy.  Todd stepped up and helped me in so many ways.  He guided me through the funeral arrangements, he led me through the process of recording the will, he helped me consult with my financial advisors and most importantly, he provided a strong shoulder for me to lean on when I needed it the most.  I did not have to ask Todd for anything; he just did it.

I consider myself very fortunate because I have many friends.  If I had to give them all away and only keep one, I would keep Todd.  He is the best person I know.  I have never met anyone more loyal, trustworthy, dependable and caring.  I am aware of the offense of which Todd was convicted, but that will never change my opinion of him.  He is my friend forever.  He has made me a better person and has meant so much to me and my

family.  Please consider the most lenient sentencing possible for his case.  Our community, his family and his friends all need him.  Todd does make this world a better place and will continue to do so with every day that he has here on Earth.

With my respect,

Amy Titus



10.25.23

Dear Judge Bartle:

I was born and raised in Northeast Philadelphia in a middle class family. My parents were my role models. For every lesson we had within the walls of my childhood home, or my local neighborhood school; there were dozens of lessons learned out on the grounds of the local park. Team sports, or pick up games on the courts or out on the field all contributed to the development of "lfe" characteristics; competence, confidence, connections, character and kindness.

I am currently successfully employed as an Elementary School Teacher and mother of four children. Three of my children took a great interest in sports. My fourth child was diagnosed with Cerebral Palsy at birth, and although she is cognitively independent, she struggled in the area of sports and followed her interests in drama and theater.

We moved out of Philadelphia into Huntingdon Valley, Pa. in 2009 for a bigger house, more outside space and an inclusive school. It was then that we registered our children for the local sporting teams. These teams were mostly "in house" teams that offered local kids the chance to play basketball, baseball and soccer with kids from their school. My oldest son, Nicholas, tried out for a local travel team, VYTAL Baseball, and I soon realized how blessed we were. Todd Goodman started this organization to provide more competitive opportunities for local youth to play the game of baseball. It was obvious by the end of the first practice that Todd Goodman knew "his stuff"; not only about baseball but also about life. Todd is a family man, first and foremost. There is nothing that Todd wouldn't do for his wife, Renee, and his boys, Ross and Lance. The VYTAL Baseball team was an "extension" of his family. He created an organization, a team and a following of players and families that recognized his "goodness" right away. He recognized the importance of each player on the team and he instilled in them the true meaning of sportsmanship. He set the bar high for "all of his" players, including his son who played on the team. Every player was expected to show up on time and give 100% of themselves at practice. Of course, Todd wanted his team to win, but he taught them that there was so much more than the win. He coached by example, and he was always respectful to the players, parents, fans, and officials. He maintained his composure, even in the most stressful minutes of a big game, and he had a positive attitude in victory and in defeat. He demanded the same from the players and spectators at each and every game.

Nicholas played for Todd for a number of years. The teen years can be the most difficult and I knew it was important to surround my children with the most positive people. Mr. Goodman was that person. When you played for Todd, he was invested for life. This was not only for the player, but the family as well. Todd gave endless hours,

beyond his workday, to provide the best experience for each and every baseball player throughout the season.  Standing at the dugout before a game or sitting in the huddle after a win or loss, you would find Todd pointing out all of the good parts of the game. Of course, hits and catches would be acknowledged, but Todd would focus on elements of character. If he saw a player applying a newly practiced play, he would sing that player's praises.  If he saw a batter keep his head up, even when he was faced with a full count and then struck out, he would take notice of the commitment of the player. It was always about sportsmanship and bringing "your best game" every time you stepped on the field. He was tough when he needed to be, and yet the boys grew to understand it was because he cared about them as players and most of all as "gentlemen".

Nicholas is now 27 years old, and his baseball years are long gone, but his relationship with Todd Goodman and the Goodman family will last a lifetime. My son, as well as his whole family, value this friendship!  We learned a long time ago that Todd is a "GOOD MAN". Todd would do anything for anyone! He has always been selfless; doing without to make sure that his family and community had what they needed. He worked tirelessly, beyond his workday to create a baseball organization that gave boys, during their most influential years, opportunities for success.  Todd has continued to follow these players and their families. He checks in with his players via text and/or he even meets up with them for dinner.  Former players continue to share news of weddings, graduations, and careers with Todd. The players, family and community know that Todd is a man of character.

My two younger sons went on to play a variety of sports, including baseball. They played for a variety of different teams and different coaches but not one of them could ever compare to Todd Goodman. He taught lessons that have carried on way beyond the baseball field.   He is respectful, fair, responsible, caring, and empathetic.

I was blessed to have my parents as role models when I was growing up. In addition, I had endless opportunities to work on character development at my local playground. I worried that would never happen with my four children when I moved out of Philadelphia.  Todd Goodman proved me wrong! Todd Goodman is a pillar in our community.  He is an amazing family man, husband, brother, son and friend.  I am proud to call Todd Goodman my friend, and I will continue to look to him, his wife Renee and his two boys, Ross and Lance, with admiration and respect.

I am grateful that I had the opportunity to speak on Todd Goodman's behalf. Thank you for your time.


Sincerely,
Colleen Cerruti



A.007

This page is intentionally blank



## OXMAN GOODSTADT KURITZ P.C.
### ATTORNEYS AT LAW

2021 NEW ROAD, SUITE 22
LINWOOD, NJ 08221
WWW.OGKLAWYERS.COM

TEL: 856-770-0009 • FAX: 856-770-0053

HARRY J. OXMAN#
SHELDON A. GOODSTADT*
DAVID KURITZ*+

JOSEPH S. OXMAN#
TODD A. GOODMAN*

*ALSO MEMBER OF PA BAR
+ALSO MEMBER OF FLA BAR
#MEMBER OF THE PA BAR ONLY

OF COUNSEL

FRANCES M. MINNIS#
JOHN MALONE#
DANIEL I. WARD*+

November 1, 2023

Honorable Harvey Bartle III
16614 U.S. Courthouse
601 Market Street
Philadelphia, PA 19106

**Re:    USA v Goodman**

Dear Judge Bartle:

I have had the pleasure of knowing Todd Goodman for approximately 25 years. We met when our sons were playing T-Ball. We have been friends ever since. I have always admired Todd's commitment to both his family and our community and I am pleased to be able to write this letter for him.

Over the years, Todd coached all 3 of my sons in various little league sports. As a coach, it was important to him that the children learned the skills necessary to participate in the sport, but it was even more important to him that they learned skills that would help them in life. Todd stressed giving your best effort, teamwork, and good sportsmanship. Good character was paramount, win or lose. I admired Todd's ability to maintain the highest degree of character when coaching, even when confronted with the occasional "little league parent." He was fair-minded and treated everyone with respect. My wife and I felt lucky every time one of our sons played on a team with Todd as their coach.

Since I have known him, Todd has always made time to help our community. For example, at one point in time many of the young athletes in our community were leaving to play sports elsewhere because our township did not offer travel sports at the same ages and genders that other communities did. When Todd noticed our community was under served in this regard, he acted. Despite long odds and resistance from the entrenched little league establishment, Todd

**A.009**

started a new travel sports organization from scratch that served all the youth of our community, including girls for the first time. I believe Todd moved forward with this plan because he felt it was the right thing to do, especially for the girls, even though his own boys had opportunities to play elsewhere. The new youth travel league became a great success, giving many children in the community an opportunity they otherwise would not have had. As a volunteer who assisted Todd with the creation of this new organization, I can tell you firsthand how hard Todd worked to make it a reality.

In addition to being Todd's friend, I consider myself fortunate to also be his employer. Over the last 10 years, Todd has worked in various capacities as an attorney for my firm, Oxman Goodstadt Kuritz, PC. He has worked as a per diem attorney, part-time attorney and, for the last 18 months, a full-time associate attorney. As his direct supervisor, I can tell you that he is an honest, hard-working and skilled attorney. He is well liked by our staff, our clients and even opposing counsel. My own clients have commented on how compassionate and empathetic he is and I have observed the same. In my opinion, Todd is a man of good character and has always conducted himself in an ethical manner.

As a member of the bar, I do not take writing this letter lightly. I am aware that Todd has pled guilty to a single misdemeanor and I tell you without hesitation that has not changed my opinion of him. In fact, it reinforces what I have always observed regarding his commitment to his family first over his own personal needs. He remains my friend and continues to be a valued member of our firm.

Very truly yours,

DAVID KURITZ

**A.010**

To: Judge Bartle

Character letter for Todd Goodman;

 I understand the seriousness of the charges against Mr. Goodman however this has not in any way changed my opinion of him. In fact, my experience over the past thirty four years with Todd Goodman has been one of incredible generosity, trust and compassion. I was struck by an automobile as a pedestrian, while working on 09/05/1991 and due to injuries sustained my life was turned upside down. I was unable to work and my employer was refusing to acknowledge my work status at the time of this accident/ workplace incident. I was very young with no experience with workplace issues and I was drowning in debt, unable to pay any bills. A friend of mine suggested I get an attorney to fight my employer and she recommended Todd Goodman. Todd met with me in 1991 and decided to take on my case and represented me for the following thirty plus years. Todd fought my case in court and was able to secure my workers compensation payments beginning in 1991. He went to well over 20 in person hearings and spent thousands of hours of his time fighting for my case over the next 30 years, never taking any money he was entitled to by law. He told me he understood the hardship of my permanent disability coupled with the small amount of my bi-weekly payments and therefore he would not be taking any money for his work. Due to a life threatening health condition, unrelated to the accident, my employer kept me in their workers compensation system for over 30 years. My employer and their attorneys battled against my case for over 20 years, trying to disqualify me due to my unrelated health status. Todd Goodman was by my side fighting my case, winning every court hearing over the next 20 plus years, and still he never took any money his firm was entitled to. After paying me for over 30 years my employer finally reached out to Todd and offered a lump sum settlement in 2019. Todd Goodman facilitated my settlement payment and even then, after all his time dedicated to my case, he did not take any entitled payment. My personal experience with Todd Goodman has been one of kindness, honesty and incredible generosity. Todd Goodman is exactly that, a good man, a great friend and someone I have trusted with my life/security for over thirty years.

Thank you for your consideration.

Sincerely,

Dianna Pagan

██████████████

█████████████

███████

**A.011**

Emily Goodman – Proud Daughter in Law of Todd Goodman



10/19/2023

Honorable Judge Bartle,

Re: Character Reference for Todd Goodman

Dear Judge Bartle,

I am writing to vouch for the character of Mr. Todd Goodman, whom I have had the pleasure of knowing for the past seven years. I came to know Todd through my husband, Ross Goodman, Todd's incredible son. I am Todd's favorite Daughter in Law.

From the outset, Todd made me feel as though I was part of the family. He embodies the very essence of the father figure many long for — nurturing, protective, and unwavering in his support. His strength and courage are palpable, I genuinely aspire to be even half the parent and friend that Todd has consistently been to us.

Todd consistently prioritizes the well-being of others above his own. An example of this was when his father passed away. Despite grappling with his own grief, Todd became a pillar of strength for the entire family, offering his shoulder to those in sorrow and lending an ear to anyone in need. He has undeniably been the backbone of the Goodman family throughout the years I have known him.

Moreover, Todd's generosity extends beyond mere words; it is reflected in his actions. Whether it's a family gathering or a personal milestone, Todd never hesitates to offer his time and presence, showcasing his unwavering support and commitment. To offer some context, I run a small business specializing in tie-dye apparel. Todd, showcasing his unwavering support, proudly boasts the most extensive collection of my tie-dye creations. This gesture speaks volumes about his character, Todd's dedication and support remain steadfast and undeniable.

His reliability is unmatched. I can say with absolute certainty that if ever I were in need, a call to Todd would be met with immediate assistance. He is a dependable man with a heart of gold.

While I am aware of the charges against Todd and his subsequent plea, these incidents do not overshadow the years of kindness, selflessness, and love that I have witnessed. I implore the court to consider the full measure of his character when rendering its decision.

Warm regards,

Emily Goodman

Emily Goodman – Daughter In Law

**A.012**

Judge Bartle,

My wife and I have known Todd Goodman for many years. We have witnessed his caring and understanding as a husband and father for the well-being of his family. On many occasions, we have been together socially, and have enjoyed his presents as a fine friend!

We also have had a long term relationship with him, as a pharmacist at Verree Phcy.

I would be there every month to refill prescriptions, and Todd would make sure, I understood how to take my meds, and answer any questions!

A few years ago, I had major surgery, and was confined to my home. Todd helped me beyond the call of a neighborhood pharmacist. Contacting my Doctors, and going out of his way to deliver Rx's to my home!

We are aware of the charges against Todd Goodman, but every time I was in the pharmacy, I witnessed the concern and interest Todd with everyone about their RX's, and that they understood

how to take their meds, in order to achieve the results needed for their condition!

Todd always answered my concerns, and everyone else, who relied on his knowledge of medicine!

The way Todd Goodman helped me and everyone I witnessed, while in the pharmacy, does not coincide with the offense towards an individual of his character, concern, and caring for patients! Who all put their trust in his expertise and knowledge!

Thank You,
Bob & Nilla Greenberg

Harris J. Chernow



November 9, 2023

The Honorable Harvey Bartle

16614 U.S. Courthouse

601 Market Street

Philadelphia, PA 19106

RE: Todd A. Goodman

Dear Judge Bartle,

I write this in connection with the matter of Todd Goodman as I am aware that Todd has pled guilty in his matter coming before your Honor. Given this occurrence, one might step back and rethink their relationship with or opinion of someone like Todd after such an event, but I can state unequivocally that my opinion and relationship with Todd is unwavering. You may ask why? That's because after at least 44 plus years of friendship, I know Todd. Not an acquaintance – but true friendship.

If you want someone on your side, it's Todd. Whether it's as your teammate on a sports team, your side kick through the high school era, your lunch pal at Temple, your friend that is part of the groomsmen for your wedding, your lawyer friend co-worker, your friend to hang out with at social occasions, the person to enjoy one another's family events as we grow older with our respective families, your wives to become friends from the start, the friend attending each other's kids' weddings, or just someone to shoot the breeze with.

A friend is not just someone you meet, its someone you judged to be your friend because of his/her integrity, is there for you during the good times but most importantly during the not so good, is a person that you can trust, is a person that will be honest with you and tell it like it is even if that's not what you wanted to hear, is a person that is smart, is a person that has a great sense of humor and a person that is opinionated and not simply a yes man, is a person that will be there and do as needed whether it's for a friend in need or more so for a person that he doesn't know but extends help as needed. That describes to me what a friend should be, and it describes for me who Todd is.

If you want more, these are NOT cliches – a great dedicated son, brother, husband, father, father-in-law, and friend to many. During all of this, the relatively recent loss of his father took something from him (as it would for most) but he stayed strong for his mother, his brothers, and the entire Goodman family. Nothing would get in the way of making sure his family is taken care of, even when he is going through a matter like this where one could easily become selfish as to only wanting to deal with one's own issue. Not Todd.

I have known Todd long enough and in settings where he is not just a friend but a great friend. I hope this letter in some small part lets you understand Todd Goodman, the person, and not just another

person having entered a plea. Knowing Todd as well as I do, I am not surprised he has accepted responsibility for his actions.

When it comes to deciding on a sentence, I would ask that you consider leniency for Todd, as Todd is an truly asset to society based on the totality of the facts and who Todd is as a person. It's next to impossible for you to really get a true sense for who Todd is, but hopefully you can get a sense of this decent human being, ok, not perfect (but who is?), who pled to something that was very much out of character.

Other than it being under these circumstances, it is truly an honor to write on behalf of my friend, Todd, and I would be willing to answer any questions you might have for me about Todd.

Respectfully submitted,

s/Harris Chernow

**A.016**

Dear Judge Bartle,

My name is Jay Goodman, Todd Goodman's younger (middle of three) brother. I have known Todd for my entire 58 years, and have LOTS of history with Todd, including sharing a bedroom with him our entire upbringing.

While I am aware of Todd's guilty plea in this matter, I can say with certainty that to know Todd and judge him accurately requires knowing the full "body of work" of Todd's life and his incredible effect on those around him.

Again, I am his younger brother, and it is because of Todd that anywhere I went or anything I ever did as a kid, I never felt alone. Todd was always there whenever I needed or whenever I didn't quite need but was probably going to.

To try to encapsulate Todd's loyalty and selflessness, I told a story at his wedding. A story of when we were young, I was probably 9 years old and Todd would have been 11 years old. Growing up in rowhouse Philadelphia we were always playing out back with the myriad other kids who lived on our block.

About 15 of us were playing some type of frisbee game and the frisbee came to rest in the back of someone's house and Todd went to retrieve it. When Todd got to the frisbee, the neighbor's trained German Shepherd attack dog broke through the back door and lunged right at Todd, attacking him and aggressively biting his leg as the dog was trained to do.

All of us saw this happen and we were kids, so we scattered, some jumping in trees, one kid jumping on a car, etc. The dog eventually let go of Todd and ran towards another friend of ours and bit him as well. I was young and it was all a blur, but what I remember most is Todd's leg getting mauled, and yet Todd somehow grabbing me by the back of the shirt, pulling me off the ground and pushing me to run, ahead of him, to safety.

The story may sound a little cliche, but in a moment of absolute panic for everyone, Todd showed his instinctive reaction to make sure I was safe before he was. This was Todd as an 11 year old and frankly nothing has changed.

Todd continues to show an unwavering commitment and generosity of spirit to family and friends to the point of selflessness. He's a very rare individual in that regard.

While nobody is perfect and we all can have an  indiscretion at times, Todd's commitment to what is right vs. what is popular is also never in question. One story in particular that comes to mind is as a little league baseball coach, enforcing a "no runner advancing" rule on his own team.

His kids were very young at the time and it was the last inning, late in the game and his team had a hit. The team in the field bobbled the ball as kids this age do and a runner rounded third

to score the go-ahead run in the championship game! Todd told his runner to go back to third base as the rule was "no runners advancing" once the ball is in possession.

The pummeling that Todd took from the other parents was ridiculous. Parents screaming "it was the winning run", "it was for the championship" and Todd giving the same answer each time, "it's the rule, you want to tell the kids the rules only apply when it's not the go-ahead run or not the championship??".

It didn't make him popular and I actually had to escort him to the parking lot but I was never less surprised, and I was never any prouder. It was typical "Todd", my brother, like I've always known him; honest and full of integrity.

Despite Todd's guilty plea I find myself looking and thinking about Todd in no less light than I always have, as I view the entire "body of work".

He's always been there for me, and I can only hope that I've been there for him to some degree as well. I love, admire and respect  Todd no matter what. He is my hero, he is my best friend, he is my brother.

Thank you.

Jay Goodman

11/1/23

Dear Judge Bartle:

My name is Jeff Moskowitz, and I have known Todd A. Goodman for 42 years as both a work colleague and personal friend. I first met Todd in 1981, working at Rapoport Pharmacy. I began working at Rapoport Pharmacy in 1969 when I was 14 years old, graduated pharmacy school in 1977, became the pharmacy's manager from 1977 until September 1989 when I purchased the pharmacy and became the owner. Todd began working at the pharmacy in 1981 until he graduated pharmacy school in 1986. Over those 5 years, I got to know Todd very well. He had a tremendous work ethic, and was always a pleasure to be around. He got along with the full staff, our patients and was always eager to learn. One of his most admirable attributes was his ability to care for others - especially in the way he counseled our seniors on how to take their medications. Todd was extremely trustworthy, and over the years, we became personal friends, and even better friends as we both got older.

I thought so highly of Todd that I fixed him up with one of my best friend's sisters – to whom he is now married. In 1986, Todd decided to go to law school after pharmacy school which both demonstrated and illustrates his interest and respect for the law and legal system. Although we did not see each other as often, once he switched careers, we remained in close contact.

Todd worked full time as an attorney until 2003 and then decided to look back into the pharmacy profession. He worked at Walgreens for a few years and then, in 2005, began working at Verree Pharmacy. He worked there for many years, and at the end of 2021/beginning of 2022, he asked if I could use him at my pharmacy as well. Todd then worked for me again, on a part time basis until I retired in April of 2022. During this time, Todd continued to demonstrate his trustworthiness, hard work, and compassion, especially for our elderly patients.

All that said, I am fully aware of the offense of which Todd is convicted and still, my opinion of Todd is not changed. I personally have never had any issues with Todd – professionally or personally - I have known him to be a wonderful husband, father, mentor, and friend. I've watched him coach both of his sons in baseball for many years and have had the privilege of witnessing the extremely close relationship he maintains with both his parents and his two brothers. Todd comes from a wonderful family that is the definition of what family is, and anyone that knows him on a personal level, can see he is extremely loyal and a family man.

**A.019**

Should you have any follow-up questions, please feel free to reach out to me directly.

Sincerely,
Jeff Moskowitz
████████████

October 30, 2023

Dear Judge Bartle:

I am writing this letter on behalf of my brother-in-law, Todd Goodman. Although I am clearly aware of the offense in which he has been convicted, I do not waiver in my feelings of love and support for Todd. When I met my husband over 35 years ago, I had no idea that I would forge such a strong relationship with his entire family. I consider myself so lucky to have the best "in-law" family. Right from the start, I knew that my oldest brother-in-law, Todd, was someone special. The word "special" defines who Todd is as a brother-in-law. Todd consistently conducts himself in a "special" way to make those around him feel extra loved. For me, it is the way he treats me as if I were raised as his sister. He is always "there" for me, both literally and figuratively.

Over a decade ago I was driving down a heavily traveled road and was involved in a fender bender. I knew I was not physically hurt, but I was rather shaken up and quite upset. My instincts took over and I grabbed my cell phone to make a call. Todd's office was not far from the accident, so I immediately called him. I did not call my husband first, my mother or father…I called Todd. I just knew that no matter what he was involved in at the moment it would be put on hold because I needed him. Within a few minutes he appeared and instantly I knew everything was going to be ok. Todd gave me a brotherly hug and reassured me that he would take care of everything. In his special way, he made an upsetting situation no longer quite as scary or overwhelming. That is how Todd conducts himself, with those he loves and those he cares about. Boy am I lucky that I am one of the fortunate ones that benefits from the special qualities that Todd exhibits.

My wedding night was certainly one of the most memorable events in my life. Everything about our ceremony and our celebration was just perfect. We were surrounded by our loved ones, and we celebrated all night long. When I look back on that August evening, 28 years ago, one moment clearly stands out. Yes, I treasure the memory of walking down the aisle to become a bride, the father daughter dance that was everything I had ever dreamt about as a little girl, and tossing my bouquet into a crowd of excited single ladies. However, Todd's speech, as the best man, stands out as something very special. Todd admits he practiced his speech for weeks to the point that he had it practically memorized. Of course, he spoke about how excited he was for his baby brother to become a married man. However, the part of the speech that still resonates with me today is the way he looked at me, his new sister, and so genuinely welcomed me into the family. His kind words, and the gentle tone of his voice, were just so special. From that moment, I knew I had not only married my husband, and became "Mrs. Goodman," but I now have the privilege of calling Todd my special brother. Twenty-eight years later, Todd still makes me feel as special as he did that night. That is just who he is. I can honestly say that Todd is one of the most special people in my life. I hope and pray for him, and I love him very much.

Sincerely,

*Jodi Goodman*

Jodi Goodman

November 6, 2023

Judge Bartle,

My name is Lance Goodman, and I am writing to you regarding my dad, Todd Goodman. While I recognize the severity of the offense that he is convicted of, I do not believe that this offense is representative of his character as a person. I want to speak to what I know to be my dad's true character, which is being a committed father that is generous with his time and that genuinely cares about others.

Growing up my dad could not have been a more supportive father. I played all types of sports as a kid, and he would volunteer his time to coach my teams. As a coach, he loved teaching me and the other kids in our township how to play sports the right way, and he taught us all how to win with humility, lose with grace and dignity, and to treat teammates and opponents with respect. He was always stressing how important it was to be honest and to be a person of good character. He also made sure to teach us all the rules of the sport. I remember at one point when he was coaching my baseball team, he would sleep with the Major League Baseball rulebook next to his bed so he could fully understand the rules of the game to teach us. He was a fun coach to play for, and always treated everyone fairly, but he was disciplinarian when he needed to be. The sportsmanship that I learned to display on the field from my dad and the importance of adhering to the rules still sticks with me today in my professional life as a 27-year-old.

My dad never took a moment for granted as I was growing up. Looking back, he was at every school event, every baseball game, every band concert, and every birthday party. Considering how much he worked, I have come to realize the full sacrifice that he made so that he could always be there for me. There is not a single moment in my life that I look back on that my dad wasn't there for, and that is a testament to his commitment to me and being a great father. I consider myself extremely lucky to have a dad like that in my life.

While his generosity with his time is what stands out most to me, he is also generous in other ways. Every fundraiser that I or my friends and family was a part of, whether it was saving the rainforest in 2nd grade, to raising money for pediatric cancer in high school and college, to raising money for type 1 diabetes for the JDRF, my dad was always the first to donate. He genuinely cares about other people and wants to play any part he can in making others' lives better.

There is not enough paper in the world for me to write down all the examples of how caring of a dad my father is, but I hope this gives you a glimpse into the man that I know him to be, and I hope you will take these words into consideration when determining his future.

From,

*Lance Goodman*

Lance Goodman

**A.022**

**Lawrence J. Leventhal, MD, FACP, FACR**

Comprehensive Arthritis Care Consultants
660 Korisa Dr.
Huntingdon Valley, PA 19006
████████████████████████
████████████████

Oct. 19, 2023

Dear Judge Bartle:

My name is Lawrence Leventhal, MD and I am writing this letter to the court in support of Todd Goodman. I am aware of the offenses for which he has been convicted.

I have known Todd for close to 30 years, when we first met volunteering for youth sports programs in Lower Moreland Township. Todd continued to regularly volunteer his time, even serving as a volunteer assistant coach for the Lower Moreland High School baseball team, of which my son was a player. Todd was looked up to and admired by all the players, not only for his baseball acumen, but more importantly for his patience, kindness, encouragement, and emotional support; attributes all to too infrequent in youth athletics, nowadays.

I have personally known Todd as a generous, gracious, and supportive member of our community, available to assist friends and neighbors in all capacities. Our families have vacationed on several occasions, and I have personally witnessed the considerate, caring, and respectful manner Todd interacts with friends, acquaintances, and complete strangers, alike. He is an outstanding, father, husband, relative and friend; an individual that my family and others in our community have come to rely on as a thoughtful, steady resource. From all my close experiences with Todd, I know him as an individual of sincere honesty and principle. His integrity has earned him the trust and respect of all who know him.

These observations and impressions are not empty words of support but reflect experiences and deep feelings about an individual I have come to greatly respect over the course of the last 30 years. Please feel free to contact me if I can provide any additional information or be of any further assistance.

Sincerely,

*Lawrence J. Leventhal, MD*

Lawrence Leventhal, MD

**A.023**

This page is intentionally blank

October 26, 2023

Dear Judge Bartle,

You can pick your friends, but you can't pick your family.  Todd Goodman is my brother.  I didn't get to choose him.  However, I would choose him as my friend because of the kind, generous person he is.  Despite being aware of the charges to which he has pleaded, he has my undying admiration for him as a father, as a brother, and as a friend.

I have watched Todd (with his wife, Renee) raise two of the most wonderful sons.  Todd has raised them to be strong, productive, kind, warm, honest, and generous men.  Todd has understood the sacrifices it takes to be a good father, to be selfless when your child's needs come first. He has tirelessly coached, and cheered, and schooled, and loved his sons.  Todd is the father role model for me.  I come to him for advice in raising my own children, hoping my boys turn out like his wonderful sons.

As my brother, Todd is my "rock," my support.  He is my go-to for counsel and he is my source for comfort when needed.  He leads me by example, showing me how to treat the people we love.  He is loyal beyond compare. I have no doubt he would stand in front of a moving train to protect me from harm's way. He is my first call when things are rough and he is my first call when exciting things happen. Watching him forge a close uncle relationship with my kids is a joy to witness. Whether coaching them in sports, making lunch dates when they are in town, or being their protector when needed, my sons  love Uncle Todd like a second father.  I recall Todd's countless summer hours at the beach comforting my young son who was afraid of seagulls.  He would create distracting camp-like games and build protective shelters just for my son to be able to enjoy the beach with the rest of our family. Selflessly, he sacrificed his own beach R and R for the sake of my fearful child. Todd goes to all ends for the people he loves.

Todd is the friend that every adult wishes for. He is fun to watch a game with. He is a cheerleader for all of us at celebrations.  He is an ever present shoulder when things aren't going well.  Quietly, he has taught me several big life lessons, making me a better person: strong men can cry, standing up to bullies is always the right thing to do, quality matters more than quantity when having friends, being loyal to the people you care about the most is paramount to being a good person, and own your mistakes and work to make them right.

With Todd as a father,a  brother, a friend, or any of the other big roles he plays, the world is a better place. I am am a lucky brother/friend .

Very truly yours,

*Matthew A. Goodman*

Matthew A. Goodman

10-30-23

Dear Judge Bartle,

My name is Paul Feldman, I am 59 years old and for the past 29 years I reside at 1641 Buck Hill Drive, Huntingdon Valley, PA 19006. I am with my wife for 41 years (married for 36 of those years), and I am in the 35th year working with the same employer. I consider myself to be a loyal person who maintains strong and long-lasting relationships with people who I consider to be like myself. That is why I am writing this letter, so I can share with you, my experience and friendship that I have with Todd Goodman.

Todd and I have been friends for over 50 years. Our friendship started when my family moved into a new neighborhood back in 1972. One family that I was able to connect with was Todd Goodman's family. They were a nice, respectable family and Todd and I became fast friends.

Todd and I grew up together in the same neighborhood and attended the same grade school. We shared the same friends, played in the same afterschool games, and weekend activities. As we got older, Todd and I were members of the same softball league (2 teams) and we were members of the same fraternal organization where we helped out with fundraising events and charitable projects in our community.

As we both matured, so did our relationship. Todd shared in many of my lifecycle events. He was an usher in my wedding and through the years we celebrated in joyous family occasions.

Todd has always been a friend and supporter of me and my family. A specific instance occurred in 1990. I was the passenger and sole survivor in a tragic auto accident. My family reached out to Todd to assist in the care I was to receive as well as the litigation that was to follow. Todd's concern and care helped me, and my family get through a tough 12-month period. For that and many other reasons, I will always be grateful to Todd.

I am fully aware of what Todd and his family are going through, and that Todd has pled guilty to the charges that he is facing.

This in no way changes my feelings towards the man that Todd is. Todd is a good man. Todd is a family man. Todd is an honest, hardworking, care giving person. I do hope that you can take into consideration the type of person Todd is, when arriving at your decision for Todd's future.

Thank you for taking the time to read my letter.

Sincerely,

Paul Feldman

**RHEUMATOLOGY CONSULTANTS**
1902 North Scott Street
Wilmington, DE 19806
**Philip S. Schwartz, M.D.**
Office (302) 655-0121

October 24, 2023

Honorable Harvey Bartle III
United States District Court
601 Market Street
Philadelphia, PA 19106

Dear Judge Bartle,

Thank you for this opportunity to write about my dear and lifelong friend, Todd Goodman. Todd and I have been friends since early elementary school. In fact I cannot remember a time when we were not friends. His parents and his house were like my second family growing up.

I have seen first hand how family is his greatest priority. As the oldest of 3 brothers he has helped care for his parents and been a rock solid support for his 2 younger brothers. He is the father of 2 sons and I have witnessed how Todd and his wife have raised such wonderful children. It is no surprise that his children look to him as their role model for how to conduct their lives.

I, too, have been the beneficiary of his advice. My children are about 10 years younger than Todd's. Over the years I have sought his advice on many aspects of issues that arise with child rearing. He was always reassuring and comforting with advice when my children were little and always provided guidance with the more challenging issues as they got older, such as providing me with contracts regarding proper behavior and responsibilities that he had created for his kids when they started driving.

I am aware of the offense for which he is convicted. This, however, is no way changes my opinion of him. Over the years and continuing to this day he is the most ethical person I know. I am a physician and we have had many conversations over the years regarding medication treatments and I have specifically sought his advice when dilemmas in treating my patients have arisen. He has and continues to provide advice, much of which comes down to reassurance that keeping the best interest of the patient in mind will guide the answer.

Another area in which he has touched many lives and been a wonderful role model is coaching. I again have benefitted from following in his approach when I coached my kids. For many years Todd coached and helped run sports programs in his township. His goal was always to build confidence, encourage teamwork and to show respect for teammates, opposing players, and the umpires. Winning games was nice but never the priority. There are still times when the parents of a child he coached will run into him in the community and thank him for helping their child become more confident at a vulnerable period in the child's life, especially if that child was not the most gifted athlete.

In summary, I am thankful for this opportunity to provide insight into the many positive ways that Todd Goodman has touched so many lives.

Sincerely,

Philip Schwartz, M.D.

**A.027**

Dear Judge Bartle:

I met my husband Todd in 1986. Todd had just graduated pharmacy school and was about to enter law school. I was beginning physical therapy school. I found Todd to be smart, funny, kind and he came from a wonderful, loving family. These were all characteristics I really admired. We were married on April 28, 1990, and have been happily married ever since.

Over the last 33 years of marriage, I have learned that my husband is the most ethical person I know. He has been by my side through sickness and health. He is loyal and my best friend. I would choose him again one hundred times over.

Todd is not perfect, but human. Todd has taught our kids to be accountable for their actions and he has done so in this matter with his guilty plea. This plea, however, does not change the way I feel about Todd personally or professionally.

Some more of the qualities I admire about my husband are his passion for fighting for justice and equality no matter how big or small. He is a principled man who constantly tries to stand up for people that cannot fight for themselves. For instance, when Todd saw that our community was not providing travel sports for all, no teams for girls, Todd fought against the township and established a separate sports league for both young boys and girls to compete in travel sports. Todd did all this as a volunteer, on his own time, and the league flourished. Many parents would personally thank me for what my husband did, especially the parents of daughters who would never have had this opportunity.

Todd has always conducted his life in an ethical manner both personally and professionally. I would often tell Todd that "my friend wants you to call her about a potential legal case and his response would always be, "I can't call her, it's not ethical for me to do so. If she wants to talk to me have her call me."

Todd, first and foremost, is a family-oriented man and has a wonderfully close relationship with his mother, brothers, nieces, nephews, and in-laws. Todd also, had an extremely loving relationship with his father who recently died this year. After his father's death, Todd has been a steady source of guidance and kindness as he helps his mother navigate the tough time of losing her husband of 61 years. Todd's mother leans on him more than ever and he continues to be a helpful, loving son.

If Todd considers you a friend, then you are part of his family. He is always there for friends and family to offer unbiased, non-judgmental advice and guidance when asked. Todd's loyalty to his friends is demonstrated by the fact that many of his closest friends he met in kindergarten.

Although Todd never pushed our boys to do anything they didn't enjoy, Todd's passion for sports rubbed off on our kids. Todd coached them both from 5-year-old soccer and t-ball up through American Legion baseball in high school, never missing their games. He also never missed a piano recital or band concert. Being a good father was the most important thing in his life.

As a coach and mentor to many young men in our township, winning was never a top priority to him despite his competitiveness. What was most important to him was the kids learning and

**A.028**

following the rules, being good sportsmen and always trying to make the least talented kid on the team better. Todd was always teaching, not coaching. His main goal every season was for each kid to work hard and be the best version of themselves. I'm not sure if the kids realized it at the time, but he was teaching them about life in the context of coaching a sport. The parents realized this, and they were always trying to get their kids on a team Todd coached.

Todd has been a wonderful role model for our sons. If they become half the father Todd has been to them, they will be great dads.

His heart is my heart. His life is my life. I am respectfully asking your honor for leniency when considering a proper punishment.

Thank you for your consideration.

Renee J. Goodman

# RENEE C. RUBENSTEIN



To: Judge Bartle

**RE: Todd Goodman**

Dear Judge Bartle:

The following will serve as a character reference regarding Todd Goodman.

I have known Todd for 55 years since we were young children and we have maintained a very close relationship. I can tell you that despite the current circumstances that he is in, Todd is arguably the finest person I have ever met from the standpoint of integrity and kindness. He is a wonderful father, wonderful sibling, wonderful son, and a wonderful friend. Over the years, he has always been there for me, offering kind words of encouragement or advice. Sometimes, all he would do is listen because he knew that was what I needed. I am aware of the offences that he has pled guilty to and I would like to advise that my opinion of him has not changed in terms of his moral integrity, his kindness, his friendship, and the type of person that he is. He is a man of integrity with an ironclad moral compass, and I am sure he will continue to be so and be so for the rest of his life.

I hope that you will take this information into consideration for this unique individual.

Sincerely,

*Renee Rubenstein*

Renee Rubenstein

**A.030**

Ross Goodman

██████████

████████████████

09/26/2023

Honorable Judge Bartle

Re: Character Statement for Todd A. Goodman

Dear Judge Bartle,

I am writing to provide a character reference for my father, Todd Goodman, who I have known for my entire life of soon to be 30 years. As his son, I would like to express my thoughts and experiences concerning his character and his commitment to his family and friends.

I am fully aware of the offense for which my father has pled guilty, and I want to be clear that my opinion of him has not wavered because of it. In my view, his guilty plea does not begin to define the entirety of his character.

My father has always been a pillar of support for our family and friends alike. He has consistently displayed qualities of generosity, compassion, and dedication that have made a profound impact on those fortunate enough to be in his life. I would like to provide a few examples that highlight these qualities:

1. **Generosity**: There are many instances of generosity by my father that I have witnessed first-hand as his son. Some of which, I've come to appreciate even more as I've gotten older. An example that sticks out to me the most, was his commitment to going out of his way to always bring me back a present when he would travel for work. Growing up, given my obsession of Beanie Babies, that would mean a new Beanie Baby toy when he would return home after every trip. It didn't matter if there was a store around the corner from his hotel, or if he had to go way out of his way to find a store that sold them. Without fail, there would always be a Beanie Baby animal at the end of every welcome-home hug and kiss.

2. **Commitment to Family**: Throughout my life, my father has shown unwavering commitment to our family's well-being. He has been a loving and supportive parent who has worked tirelessly to provide for us emotionally and financially. His dedication to our happiness and success has been a constant source of

inspiration. Early on in his law career, he had the opportunity to continue working for a very well-respected law firm where he would have made a very good living. However, it would have meant sacrificing time spent with his then young family. Not wanting to sacrifice that precious family time, he decided to leave that law firm and take the risk of becoming his own boss. This allowed him to be able to be home for dinners, coach my brother and I in sports, and all in all be a present figure in our family's lives. While he definitely left money on the table by leaving, that didn't come close to the importance of being there for his family.

3. **Friendship**: My father's friendships are built on trust, loyalty, and empathy. He has a unique ability to connect with people on a deep level and offer unwavering support during their toughest moments. Many of my father's friendships have lasted multiple decades. Many of them feeling like family members to my brother and I. When his friends have experienced personal crises, my father has been a steady and reliable source of support. His friendships are a testament to his character, as they all have stood by him despite his legal troubles.

4. **Community Involvement:** My father was a pillar in our community growing up as he was always the first to volunteer to coach all of our little league teams. He even served as commissioner of our community basketball league for a few years. But the community involvement that stands out the most to me, is when he noticed that our community sports association did not offer travel sports for girls or certain boy age groups, as opposed to some of the neighboring communities who had travel sports opportunities for all ages and genders. After realizing this, my father took it upon himself to create a new travel sports league, so that every kid, not just his kids' age groups, could have the opportunity to compete at a higher level. Let me be clear, my father faced a lot of opposition from our original community league. But despite the opposition, and frankly the hate, he continued with this new league because it meant giving every kid in the community a chance to find and foster their passion.

Throughout my life, my father has been a steadfast beacon of guidance for myself and my brother. He has imparted invaluable lessons about character, integrity, and honesty. From my earliest days, I took note of how my father interacted with people. From coworkers to waiters and waitresses, and from people of authority to janitors. No matter their status, my father always treated them with the same level of respect. He demonstrated this through his own actions. He taught my brother and I that character is not only defined by what one says, but by the consistency of one's actions.

Integrity has always been, and currently is, the cornerstone of my father's character. He has always encouraged my brother and I to do what was right, even when it was difficult or inconvenient. Whether that meant standing up to a bully who was picking

on a classmate or searching for the owner of a lost wallet that we found down at the beach. He taught us that integrity meant staying true to one's moral compass, even in the face of adversity or temptation.

Honesty is another virtue that my father has always held in high regard. He taught us that honesty was not just about telling the truth, but also being transparent and accountable for one's actions. He always stresses that honesty builds trust, and trust is the foundation of meaningful relationships. This is something that has taken on a new meaning for me as a recently married man. I credit my father for that.

Through countless conversations, shared experiences, and his own unwavering example, my father has instilled the importance of character, integrity, and honesty. He knew that these qualities would not only shape his sons into gentlemen with admirable principles, but it also enabled my father to navigate life's challenges with grace and dignity. As my brother and I grew into adulthood, we carry with us the lessons my father has continued to teach us.

In conclusion, I firmly believe that my father is a person of integrity, kindness, and resilience. While I acknowledge his guilty plea, it does not overshadow the positive impact he has had on my life and the lives of others who know him well. I hope that you will consider my perspective as you make your decision regarding his case.

Thank you for your time and consideration.

Sincerely,

Ross Goodman

██████████

████████████████████